UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
LTO PROPERTIES CORP.,                              :
                                                   :
                            Plaintiff,             :
                                                   :                **MEMORANDUM**
          -against-                                :                **AND ORDER**
                                                   :
KEN CURREY, AMERICAN EXPRESS                       :                23-CV-1795 (FB)(PK)
CENTURION BANK, and NEW YORK CITY                  :
ENVIRONMENTAL CONTROL BOARD,                       :
                                                   :
                            Defendants.            :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff LTO Properties Corp. ("LTO") brought this foreclosure action pursuant to New York Real Property Actions and Proceedings Law, Section 1301 *et seq.*, against Ken Currey ("Defendant"), American Express Centurion Bank, and City of New York Environmental Control Board (collectively, "Defendants"), seeking to foreclose its mortgage on real property located at 666 Mother Gaston Boulevard, in Brooklyn, NY (the "Property"). (*See* Compl. ¶ 10, Dkt. 1.)

Plaintiff now moves to enforce a settlement it purportedly entered into with Defendant Currey.[1] ("Motion," Dkt. 49.) The Honorable Frederic Block referred the Motion to me.

For the reasons stated below, the Motion is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual background as stated in this Court's Report and Recommendation ("R&R") recommending that Plaintiff's motion for default judgment be granted, *LTO Props. Corp. v. Currey*, No. 23-CV-1795 (FB)(PK), 2024 WL 4250313, at *1 (E.D.N.Y. Aug. 12,

---

[1] The Motion also requests a stay of discovery pending resolution of the motion to enforce settlement. The Court has already vacated existing discovery deadlines pending resolution of the Motion. (*See* June 16, 2025 and July 5, 2025 Orders.)

1

2024), *R&R rejected*, 2024 WL 4276179 (E.D.N.Y. Sept. 24, 2024) (rejecting R&R after Defendant appeared).

Plaintiff LTO is a corporation organized under the laws of the Cayman Islands with its principal place of business in Miami, Florida. (Compl. ¶ 2.) It holds a mortgage and note evidencing a loan agreement originally negotiated between National City Bank as lender and Ken Currey and Joyce Currey[2] as borrowers. (*See* Mortgage, Ex. B to Compl., Dkt. 1-1 at ECF p. 3; Note, Ex. C to Compl., Dkt. 1-1 at ECF p. 13.) The Loan was assigned to Plaintiff on October 23, 2020. *LTO Props.*, 2024 WL 4250313, at *1.

On October 21, 2022 and in compliance with state and federal law, Plaintiff issued pre-foreclosure notices to cure. (Compl. ¶¶ 17–19; *see* Notices, Ex. F to Compl., Dkt. 1-1 at ECF pp. 37–52.) On December 14, 2022, Alyssa Kapner, counsel for Plaintiff, emailed Defendant, stating that Plaintiff's counsel had recently received his letter and offering Defendant "the attached forbearance agreement." ("Emails" at 8,[3] Dkt. 58; *see also* Decl. of Ken Currey ("Currey Decl."), Dkt. 36-2.) On January 23, 2023, counsel again emailed Defendant, stating: "[P]lease advise if you intend to execute the agreement. If not, we will be commencing a foreclosure action soon." (Emails at 7.) Defendant replied the next day, "apologizing for not responding to [counsel's] previous emails [because] this is the first time [he was] seeing this email with [her] attachment," and stating that he would review the document and reply as soon as possible. (*Id.*) Counsel then offered to change the date for the first payment if Defendant wanted to proceed with the forbearance, and Defendant replied that he did. (*Id.* at 9.) On February 1, 2023, Defendant emailed the executed agreement to Plaintiff's counsel. (*Id.* at 6.)

On March 8, 2023, Plaintiff initiated this foreclosure action (Dkt. 1), alleging, *inter alia*: "As of

---

[2]  Joyce Currey was originally named as a defendant in the Complaint but was dismissed from this action on August 1, 2024 (*see* Dkts. 28 & 29) because she had passed away on January 6, 2020 (Opp. at 2).
[3]  Citations to the Emails refer to ECF pagination.

2

the date herein, Ken Currey and Joyce Currey have failed to respond to the Default Notice and the 90 Day Notice." (Compl. ¶ 20.)

The affidavit of service of the Complaint and Summons on Defendant states that service was effectuated on April 3, 2023. (Aff. of Service, Dkt. 12.)

On April 10, 2023, Defendant emailed Ms. Kapner, stating that he had "received the preforeclosure notice last week" and that he "want[ed] to apologize for misinterpreting[] the contract" because he "was under the assumption that this contract was a forbearance that gave [him] until July to start making payments." (Emails at 3.) Defendant stated that he was "in the process of sending catch up payments to [Plaintiff's counsel] for February, March, and April . . . ." (*Id.*)

Because no defendant appeared in the action, Plaintiff moved for entries of default (Dkt. 14), and on May 4, 2023, the Clerk of Court entered certificates of default against all Defendants. (Dkt. 15.) On May 5, 2023, the Court directed Plaintiff to serve and file a motion for default judgment.

On May 8, 2023, Alan Weinreb, also counsel for Plaintiff, emailed Defendant and requested that he sign the Forbearance and Modification Agreement ("Forbearance Agreement," Dkt. 49-1 at ECF pp. 5–10) and the Stipulation Consenting to a Final Judgment of Foreclosure and Sale ("Stipulation," Dkt. 49-1 at ECF p. 12). ("Plaintiff Emails" at ECF p. 14, Ex. C to Kapner Decl., Dkt. 49-1.)

The Forbearance Agreement sets forth the terms of the loan forbearance and modification from June 1, 2023 to May 1, 2024 and required, *inter alia*, that Defendant pay a down payment and new monthly payment amounts in exchange for Plaintiff agreeing not to pursue foreclosure during the term. (Forbearance Agmt. at 2.)

The Stipulation states:

IT IS HEREBY stipulated and agreed by the attorneys for Plaintiff LTO ("Plaintiff") and Defendant Ken Currey ("Defendant") that the within action is hereby settled as between Plaintiff and Defendant, and each agrees to the following:
(1) Defendant hereby consents to the entry of a final Judgment of Foreclosure and Sale by this Court, which will result in a judicial foreclosure sale.
(2) Plaintiff will not seek a deficiency judgment against Defendant.
(3) No modifications, amendments or extensions of this Stipulation shall be valid, unless in writing and executed by all signatories herein.

In his email to Defendant, Mr. Weinreb stated: "The Stipulation will be kept in escrow and will not be filed unless there is a default during the forbearance term." (Plaintiff Emails.) On May 16, 2023, Defendant executed the Forbearance Agreement and the Stipulation.

On June 9, 2023, Plaintiff filed its first motion for default judgment based on Defendant's failure to appear in this action or otherwise respond to the Complaint. ("First Default Judgment Motion," Dkt. 16.) Neither the Stipulation nor the Forbearance Agreement is mentioned or included as an exhibit to the motion.

On June 23, 2023, Defendant emailed Ms. Kapner, stating that he "received a call today from [the loan servicer] stating that the good faith payment of $10,000 and [his] initial [$]2,521 payment [were] rejected by [Plaintiff]" and asking if she would "explain why they would reject money?" (Emails at 2.)

At the July 7, 2023 initial conference, at which no defendant appeared, Ms. Kapner stated that Defendant "ha[d] executed a forbearance agreement and [had] not sent in . . . [the] down payment and first payment [that were] supposed to be sent in by July 12th." (Tr. July 7, 2023 Conf. 4:1–5, Dkt. 56.) The Court directed Plaintiff to file a status report by July 21, 2023, "informing the Court whether the payment has been received and [whether] the Motion for Default Judgment will be withdrawn without prejudice." (July 7, 2023 Min. Entry & Order.)

Plaintiff filed a letter on July 21, 2023, stating that Defendant remitted two payments pursuant to a forbearance agreement. (Dkt. 22.) On August 4, 2023, Plaintiff filed a further status report stating

4

that it had implemented a forbearance agreement until May 2024, and requesting a stay of the case pending the forbearance term. (Dkt. 23.) The Court granted the stay and directed Plaintiff to file a status report by the end of the forbearance term, May 31, 2024. (Aug. 7, 2023 Order.)

On January 3, 2024, Plaintiff filed a renewed motion for default judgment ("Second Default Judgment Motion," Dkt. 24), attaching the Stipulation without explanation or reference to the Forbearance Agreement (*see* Weinreb Decl., Dkt. 24-1; *see also* Pl. Mem. at ECF p. 5, Dkt. 24-2). The Honorable Frederic Block referred the Second Default Judgment Motion to me for a report and recommendation. (Jan. 3, 2024 Order.)

On June 3, 2024, Plaintiff filed a status report stating that "Defendant did not comply with the terms of the forbearance agreement" and that Plaintiff wished to proceed with its motion for default judgment. (Dkt. 25.)

On June 5, 2024, the Court directed Plaintiff to file supplemental briefing that, *inter alia*, addressed "whether the Stipulation Consenting to Final Judgment of Foreclosure and Sale between Plaintiff and Defendant Ken Currey (Dkt. 24-7) is in effect and has any impact on [the Second Default Judgment Motion]." (June 5, 2024 Order.)

On June 18, 2024, Plaintiff filed a letter stating:

> The Stipulation was executed concurrently with the Forbearance Agreement . . . [which] Plaintiff held in escrow pending the successful completion of the Forbearance Agreement. The Stipulation was only to be filed with the Court if the Defendant defaulted on the terms of the Forbearance Agreement. . . . On January 3, 2024, after Defendant defaulted . . . Plaintiff filed the [Second Default Judgment Motion] and included the Stipulation to communicate to the Court that Defendant consented to the entry of a Judgment of Foreclosure and Sale Order if he defaulted on the Forbearance Agreement.

(Dkt. 26.) Plaintiff did not file the Forbearance Agreement with this letter.

At the motion hearing on July 10, 2024, the Court inquired about the Stipulation and Forbearance Agreement, and Ms. Kapner stated that Plaintiff "also had [Defendant] sign a stipulation

5

consenting to the entry of the judgment of foreclosure and sale," but that the Stipulation was "only relevant to the extent that it's just indicating that [Defendant] was aware of . . . what's going on and has consented to it." (Tr. July 10, 2024 Conf. 8:11–20, Dkt. 57.) Ms. Kapner stated further that, for the Court's consideration of the Second Motion for Default Judgment, the Stipulation was not "necessary" but rather "just supplements it and bolsters it, the fact that [Defendant] . . . stipulated to agree to an entry of the judgment." (*Id.* 8:22–25.)

On August 2, 2024, Plaintiff filed for the first time the Forbearance Agreement (Dkt. 29-1) but did not include the Stipulation or state any relationship between the two documents (*see* Pl. Ltr., Dkt. 29).

On August 12, 2024, I issued the R&R, which recommended granting the Second Default Judgment Motion and entering judgment of foreclosure and sale based on Defendant's failure to appear in this case and the Court's acceptance of all allegations in the Complaint as true.

One week later, the Court received a letter from Defendant's counsel stating that counsel recently "discovered" this action because Defendant "was not even aware of its existence until [counsel] brought it to his attention." (Dkt. 32.) Counsel requested sixty days to evaluate whether Brooklyn Legal Services could represent Defendant in this action. (*Id.*) The Court stayed the deadline to object to the R&R and set September 20, 2024 as the date by which Defendant needed to move to set aside default (Aug. 20, 2024 Order). Counsel appeared for Defendant (Dkt. 33), who thereafter moved to vacate the default entered against him (Dkts. 34, 36).

On September 24, 2024, the Court rejected the R&R, denied Plaintiff's motion for default judgment, and granted Defendant's motion to vacate default. Defendant answered on September 27, 2024. (Dkt. 39.)

On November 5, 2024, the Court entered a Scheduling Order setting deadlines for discovery. (Dkt. 44.) At the scheduling conference, Plaintiff did not state that it intended to move to enforce

6

any settlement agreement in which Defendant had agreed to an entry of judgment and foreclosure. (*See generally* Tr. Nov. 11, 2024 Conf., Dkt. 54.)

The parties commenced discovery. On February 28, 2025, the parties filed a joint status report informing the Court that Defendant had served initial disclosures, document requests, and interrogatories, and that Plaintiff had failed to respond but would serve its responses before the April 4, 2025 deadline. (Dkt. 45.)

The Court held a discovery conference on March 11, 2025, ordered Plaintiff to respond to Defendant's discovery demands forthwith, and granted Defendant leave to request adjournment of outstanding discovery deadlines sufficient to complete discovery. (Mar. 11, 2025 Min. Entry & Order.) At this conference, Plaintiff did not state that it intended to move to enforce any settlement agreement. (*See generally* Tr. Mar. 11, 2025 Conf., Dkt. 55.)

After Defendant moved to extend all deadlines, the Court set June 13, 2025, as the deadline for the close of fact discovery. (Apr. 4, 2025 Order.)

On May 30, 2025, Plaintiff filed the Motion, arguing that the Court should enforce a purported settlement agreement that the parties had entered into on May 16, 2023, consisting of the combination of the Forbearance Agreement, the Stipulation, and email communications between the parties. (*See* Pl. Mem. at 10.)

On June 4, 2025, the parties filed a joint letter for discovery, in which Defendant sought to compel production of documents, responses to interrogatories, and deposition testimony from the witnesses Plaintiff identified in its Rule 26(a)(1) disclosures. (Dkt. 50.) Plaintiff opposed on the basis that "discovery motion practice should be held in abeyance pending" resolution of the Motion. (*Id.* at 3.)

7

Defendant filed the Opposition (Dkt. 51), and Plaintiff filed the Reply (Dkt. 32). The Court vacated all outstanding discovery deadlines pending resolution of the Motion. (June 17, 2025 and July 8, 2025 Orders.)

Oral argument on the Motion was held on July 31, 2025.

## DISCUSSION

### I. Legal Standard for Enforcing Settlement

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Palmer v. Cnty. of Nassau*, 977 F. Supp. 2d 161, 166 (E.D.N.Y. 2013). "Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). "Pursuant to New York law, to have a binding settlement agreement, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Palmer*, 977 F. Supp. 2d at 166.

"Under New York contract law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties." *Schurr v. Austin Galleries of Illinois, Inc.*, 719 F.2d 571, 576 (2d Cir. 1983). "If there is no meeting of the minds on all essential terms, there is no contract." *Id.* "The totality of parties' acts, phrases and expressions must be considered, along with the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 378 F. Supp. 2d 377, 389 (S.D.N.Y. 2005) (internal quotation omitted).

"If the Court finds substantial ambiguity regarding whether both parties have mutually assented to all material terms, then the Court can neither find, nor enforce, a contract." *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006). "A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement." *Id.* at 335.

8

**II.    Analysis**

Plaintiff contends that "Defendant simultaneously executed the Forbearance Agreement and Stipulation" and that because Defendant paid amounts in accordance with the Forbearance Agreement, he "ratified" it. (Pl. Mem. at 6–7, Dkt. 49-2.) Plaintiff also argues that, because "the parties clearly agreed to the terms of the Forbearance Agreement" and Defendant defaulted under the Forbearance Agreement, Plaintiff is "entitled to proceed with the Stipulation and seek entry of judgment." (*Id.* at 7.) It urges the Court to "now enforce the Forbearance Agreement and Stipulation as written." (*Id.*; *see also* Tr. July 31, 2025 Oral Arg. ("Tr. Oral Arg.") 2:24–3:1, Dkt. 59.)

Defendant contends that the Stipulation is "unconscionable," "violates public policy," and "did not fully and accurately represent the parties' agreement." (Def. Mem. at 1, Dkt. 51.)

### A. *Terms of the parties' agreement*

Paragraph nine of the Forbearance Agreement clearly sets forth Plaintiff's remedies if Defendant defaults on his obligations under it:[4]

> If you default under this [Forbearance] Agreement or the Loan Documents[5] after the Effective Date (your "Default"), [Plaintiff] may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this [Forbearance] Agreement and exercise any of its rights and remedies against you under the Loan Documents and/or this [Forbearance] Agreement.

Immediate entry of a final judgment of foreclosure and sale or the Stipulation is not a remedy available to Plaintiff under the Forbearance Agreement in the event of Defendant's default. The plain wording of the Forbearance Agreement does not support Plaintiff's contention that "in the event of default, Plaintiff could proceed with entry of judgment without further notice" (Kapner Decl. ¶ 6, Dkt. 49-1).

---

[4]    The parties do not dispute that Plaintiff stopped making the payments required by the Forbearance Agreement, which constitutes a default under the Forbearance Agreement's terms. (Agmt. ¶ 8.)

[5]    "Loan Documents" are defined as "the Original Note and Original Mortgage." (Agmt. ¶ D.)

9

Paragraph eleven of the Forbearance Agreement includes an integration clause, which specifically prohibits additional terms unless such modifications are clearly made in a signed writing:

> This Forbearance Agreement may not be supplemented, changed, modified or omitted except by written document executed by both you and [Plaintiff].  This Modification and the accompanying Settlement and Release Agreement[6] constitutes the entire agreement between you and [Plaintiff] and, supersedes all previous negotiations and discussions between you, [Plaintiff] and/or [Plaintiff]'s predecessors in interest, and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms.  There are no promises, terms, conditions, or obligations other than those contained in this Forbearance Agreement.

Likewise, the Stipulation does not refer to the Forbearance Agreement and also contains an integration clause, which states: "No modifications, amendments or extensions of this Stipulation shall be valid, unless in writing and executed by all signatories herein."  (Stip.)

Plaintiff admits that "the Forbearance Agreement does not expressly reference the Stipulation," but contends that "the two documents were negotiated and executed contemporaneously as part of a unified resolution of this foreclosure matter."  (Kapner Decl. ¶ 3; *see also* Tr. Oral Arg. 9:6–22.)  Plaintiff does not explain why the two documents make no reference to each other if the Stipulation was intended to modify the Forbearance Agreement by creating an additional remedy for Plaintiff in the event of default on the Forbearance Agreement.  Plaintiff's description of the Forbearance Agreement and Stipulation as being executed "simultaneously" does not form a basis for Defendant's default "triggering Plaintiff's right to enforce the stipulated judgment."  (Pl. Mem. at 1.)

At oral argument, "acknowledg[ing] that the forbearance agreement itself . . . doesn't . . . reference the stipulation," Plaintiff argued that "the parties['] contemporaneous communications and conduct . . . fill in the gaps of the fact that [the Forbearance Agreement and Stipulation] don't reference each other."  (*Id.* 12:12–18.)

---

[6] No "Accompanying Settlement and Release Agreement" was annexed to the Forbearance Agreement (*see* Forbearance Agmt.; Def. Opp. at 18; Tr. Oral Arg. 25:24–26:9), and Plaintiff does not contend that the Stipulation is the "Accompanying Settlement and Release Agreement."

10

Filling in the gaps is precisely what the integration clauses contained in each document prohibit. The plain written terms of the Forbearance Agreement and Stipulation, therefore, do not support Plaintiff's requested relief.

Accordingly, Plaintiff has not met its burden to demonstrate that parties agreed to the terms of an agreement that Plaintiff seeks the Court to enforce.

### B. Plaintiff's Actions

Plaintiff's course of conduct throughout the proceedings casts doubt on its argument that the Forbearance Agreement and Stipulation together constitute a binding settlement agreement that should be enforced to terminate this action in Plaintiff's favor.

As discussed above, the Court repeatedly asked Plaintiff for clarification about the meaning of the Stipulation and why it was necessary for the court to enter a default judgment in light of the "consent[] to a final Judgment of Foreclosure and Sale" contained in it. When asked why it did not seek to enforce the Stipulation instead of moving for default judgment, Plaintiff responded that it needed the default judgment in order to obtain a clear title free from "junior liens." (Tr. Oral Arg. 9:6–22.) When asked why this explanation was not offered in response to the Court's earlier inquiry about "whether the terms of the forbearance agreement and Defendants' default under those terms affect[] Plaintiff's Motion" and "whether the Stipulation Consenting to Final Judgment of Foreclosure and Sale between Plaintiff and Defendant Ken Currey is in effect and has any impact on Plaintiff's Motion" (June 5, 2024 Order), Ms. Kapner stated that Plaintiff was "just responding to the specific questions that the Court asked." (Tr. Oral Arg. 9:23–10:2.)

The Court also asked why Plaintiff did not seek to enforce a purported settlement agreement when Defendant's default was vacated, but instead proceeded to discovery. (Id. 10:19–24, 18:10–19:6.) Ms. Kapner stated, "I wish we could go back and, you know, better explain it . . . ." (Id. 19:23–24.)

11

Plaintiff's actions by requesting a default judgment in January 2024, not only against junior lienholders but also Defendant; failing to inform the Court that a settlement had been reached in May 2023 that became enforceable in early 2024; and embarking on discovery for seven months through May 2025 all tend to show that the terms of the purported settlement agreement Plaintiff now asks the Court to enforce were not clearly understood, even by Plaintiff. Thus, there is "substantial ambiguity" as to whether both parties assented to the material terms of the purported settlement agreement. *See Benicorp*, 447 F. Supp. 2d at 337.

### C. Public policy and unconscionability

Defendant contends that the agreement Plaintiff seeks to enforce contravenes public policy, particularly state and federal lending laws, and that the purported agreement is unconscionable and thus should not be enforced. (Opp. at 13, 15–17.)

The Court has already determined that there is no agreement sufficient for it to enforce. Accordingly, the Court does not reach the parties' arguments with respect to statutory prohibitions and unconscionability.

### CONCLUSION

For the above reasons, the Motion is denied.

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
        August 29, 2025